# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Charlie Choe, Michael Baio, Junda Zhu, :
Edward Rumell, Shanlin Shah, Jared :
Levin, Daniel Tokich, David Vansciver, :
Rebeccah Lavitan, Namita Kalyan, :
Moataz Elrafie, Adam Murray, :
Christopher Kui, Monica Burton, :
Patrick Lyman, Stephen Ficchi, Joan :
Schwartz, Meredith Armstrong, :
Brandon Karpo, Gennady Spector, :
Daniel Bigler, Dan Dubiner, Paul Kim, :
Pamela Beatrice, Bidlur Shivaprakash, :
Elisa Keppler, John Didomenicis, :
Alaina Gregorio, Marilyn Myers, :
Daniel Friel, Jan Topczewski, Gary :
Staegemann, Ronald Banner, Shira :
Cohen, Luigi Adamo, Lauren Dolaway, :
Sylvester Mendoza, Christopher Clay, :
Kristen Kammerer, Irving Scolnick, :
Caroline Lederman, Michael Hertz, :
Mary Ellen Byrne, Christopher Meffe, :
Jerry DeSiderato, Felix Korostin, John :
Hyson, Thomas Modafferi, Eugenio :
Boldrini, Sean Logue, Rina Kaplan, :
David Blumenfeld, Tapas Tejura, :
Thomas Murry, Lauren Aquino, Justin :
Mathews, Andry Oei, Ariel Jaduszuwer, :
Neelam Bhalakia, Stratton Lee, Zachary :
Berman, Lei Ju, Mian Jan, Daniel :
Levine, Adam Solow, Enrico Pagnanelli,:
Tuu Thampy, Marie Carroll, Jeffrey :
Rubin, Bin Meng, David Esola, Elena :
Bernardis, David Ackers, Lynn :
Rothman, Alan Herbert, David Waxman,:
Carolyn Gregory, Scott Rosenberg, :
Ajit Singh, Patricia Wong, Jeff Lazinger,:
Bartholomew Omalley, 111 S 15th St :
Associates, William Hammill, Daniel :
Spitzen, Costandi Awadalla, Michael :
Canino, Arthur Bachman, George Audi, :
Meredith Shapiro, Valsa Jacob, Farrah :

Awadalla, Jeremiah Eagan, Constantinos :
Ketonis, Michael Field, Peter Shulman, :
Gilberto Pereira, Garrett Miller, Carolyn :
Prager, Pushkar Murthy, Melissa :
Sigmond, Victoria Chen, Steven Appel, :
Siham Abarkan, Lance Moore, Georges :
Bandlec, Hsu-Nan Huang, Mitchell :
Kent, Rainer Westphal Trust, Caitlin :
Cantor, David Kwasny, Jacob Lazinger, :
John Wynn, R N Jwalamalini :
Kumaraiah, Laura Levenberg, Keerthi :
Gogineni, Anne Connelly, Arthur :
Armstrong, Edward English, Luv Ram :
Javia, Richard Gorniak, Stephanie :
Spaeder, Gary Grunder, Andrzei :
Cetnarski, Chaim Ouziel, Julie Terrana, :
Nevena Simidjiysha, Adam Telem, :
Stephen Lowe, Andrew Rosen and :
Mahbod Mohazzebi, :
                              Appellants :
                                         :
            v.                           :    No. 1824 C.D. 2019
                                         :    Argued: March 15, 2021
                                         :
From the Decision of the Philadelphia    :
Board of Revision of Taxes               :


BEFORE:   HONORABLE P. KEVIN BROBSON, President Judge
          HONORABLE ANNE E. COVEY, Judge (P.)
          HONORABLE MICHAEL H. WOJCIK, Judge


**OPINION BY**
**PRESIDENT JUDGE BROBSON**              **FILED: April 19, 2021**


Appellants, who are current or former owners of condominium units in the Packard Grande Condominium building located at 111 South 15th Street, Philadelphia, Pennsylvania (Property), appeal from an order of the Court of Common Pleas of Philadelphia County (Common Pleas), dated October 28, 2019,

2

which denied Appellants' appeal from a decision of the City of Philadelphia's (City) Board of Revision of Taxes (BRT). BRT denied Appellants' real estate market value appeals for tax years 2014 and 2015, wherein Appellants challenged the City's Office of Property Assessment's (OPA) termination of a 10-year tax abatement for each of the individual condominium units effective December 31, 2013. For the reasons set forth below, we affirm Common Pleas' order.

## I. BACKGROUND

In 2001, Chest-Pac Associates, L.P. (Chest-Pac) and 111 South 15th Street Associates, L.P. (Developer) purchased the Property, which at the time was a vacant office building. (Reproduced Record (R.R.) at 884a.) Upon acquisition, Chest-Pac and Developer divided the Property into 2 condominium units: Unit 1, which is comprised of floors 1 through 12, and Unit 2, which is comprised of floors 13 through 26. (*Id.* at 60a, 884a.) Chest-Pac redeveloped Unit 1 into retail and office space. (*Id.* at 884a.) On August 20, 2002, Developer obtained a building permit for the redevelopment/conversion of Unit 2 into 153 residential rental units on floors 13 through 25 and a health spa on floor 26. (*Id.* at 51a, 884a.) Thereafter, on September 3, 2002, Developer filed an application for real estate tax exemption for Unit 2 of the Property with BRT.[1] (*Id.* at 51a.) By letter dated March 20, 2003,

---

[1] At the time that Developer filed its application for real estate tax exemption, BRT was responsible for, *inter alia*, performing property assessments, approving real estate tax abatements and exemptions, and hearing appeals from property assessments. *See Bd. of Revision of Taxes v. City of Phila.*, 4 A.3d 610, 615 (Pa. 2010). Sometime thereafter, the City's Council, by ordinance, sought to abolish BRT and replace it with 2 newly created bodies: OPA and the Board of Property Assessment Appeals. *Id.* BRT and its members sought to challenge the ordinance before the Pennsylvania Supreme Court. *Id.* at 614-16. The Supreme Court, exercising plenary jurisdiction under 42 Pa. C.S. § 726, held that the ordinance was invalid "insofar as it eliminate[d] . . . BRT's quasi-judicial appellate function and abolishe[d] . . . BRT entirely, replacing it with the newly[ ]created Board of Property Assessment Appeals." *Id.* at 629. The Supreme Court further held that the invalid provisions were severable from the remainder of the ordinance. *Id.* Thus,

BRT approved the application, thereby granting Developer a 10-year tax abatement for Unit 2 of the Property under Philadelphia Ordinance 1130, Philadelphia Code § 19-1303.3. (*Id.* at 52a.) In that letter, BRT informed Developer that the tax abatement would commence on January 1st in the tax year immediately following the year in which the City's Department of Licenses and Inspections (L&I) issued the initial certificate of occupancy for the Property. (*Id.*) L&I issued temporary certificates of occupancy for the Property on July 10, 2003, August 11, 2003, October 23, 2003, and December 15, 2003. (*Id.* at 53a-56a.) Subsequent thereto, by letter dated January 9, 2004, BRT informed Developer that the tax abatement would be in effect from January 2004 through December 2013. (Supplemental Reproduced Record (Suppl. R.R.) at 2b.)

By letter dated June 10, 2005, David Grasso, Developer's general partner, informed David Glancey, BRT's then Chairman, that Developer intended to convert the 153 residential rental units located in Unit 2 of the Property into individual condominium units and offer them for sale. (R.R. at 60a.) In that letter, Mr. Grasso acknowledged that the Property was "subject to a [10-]year tax abatement that began on January 1, 2004[,] and ends on December 31, 2013." (*Id.*) Mr. Grasso further noted his belief "that the current abatement should be able to be provided to [Developer's] condominium buyers as owner[-]occupants on a pro-rata basis," but requested assistance from Mr. Glancey and BRT with figuring out how to accomplish the transfer. (*Id.*) On July 26, 2005, in response to BRT's guidance/instructions, Developer filed a separate application for real estate tax

---

following the Supreme Court's decision, BRT is responsible for hearing/deciding property assessment appeals, while OPA is responsible for the administrative and ministerial functions relative to property assessments, including approving real estate tax abatements and exemptions. *Id.* at 628-30.

4

exemption for each of the 153 individual condominium units with BRT. (*Id*. at 62a-176a.)  By letters dated December 8, 2005, BRT approved the applications, thereby granting Developer a 10-year tax abatement for each of the 153 individual condominium units under Philadelphia Ordinance 961, Philadelphia Code § 19-1303.2.  (*Id.* at 61a-175a.)  In each of those letters, BRT explained:

> The [10]-year abatement term will begin on January 1, in the tax year immediately following the year in which the improvements are completed. *In order to begin this exemption, you must notify [BRT] in writing of the completion date of the improvements.*  The abatement term and the abatable assessment will then be implemented as provided by [Philadelphia] Ordinance [961, Philadelphia Code § 19-1303.2].

(*Id.* (emphasis in originals).)

L&I issued the final certificates of occupancy for the Property on May 10, 2005.  (*Id.* at 58a-59a.)  By letters dated December 23, 2005, Developer's general counsel, Richard A. Koory, Esquire (Attorney Koory), provided BRT with the final certificate of occupancy for floors 13 through 25 of the Property, as well as certificates of completion for each of the 153 individual condominium units. (*Id.* at 177a-748a, 911a-13a.)  In those letters, Attorney Koory indicated that each of the 153 individual condominium units were "completed on May 10, 2005, and thus the [t]ax [a]batement [t]erm should begin on January 1, 2006, the tax year immediately following the date in which the improvements were completed." (*Id.*) Following their purchase of the individual condominium units, Appellants' annual real estate tax bills included a tax abatement for a portion of their real estate taxes. (*Id.* at 834a-83a, 885a-86a.)  The real estate tax bills that Appellants received for tax years 2014 and 2015 did not, however, include such an abatement. (*Id.*)

On October 1, 2014, Developer's attorney, Edgar R. Einhorn, Esquire (Attorney Einhorn), filed real estate market value appeals for tax

5

years 2014 and 2015 with BRT on behalf of "all [of the Property's 153 individual condominium] units,"[2] challenging what Appellants have characterized as OPA's premature termination of the tax abatements for the individual condominium units after a period of only 8 years. (*Id.* at 749a.) BRT held a hearing on the appeals on September 21, 2015, at which time, BRT heard argument from Attorney Einhorn and counsel for OPA; BRT did not, however, hear testimony from any witnesses. (*Id.* at 750a-93a.) After taking a short break to deliberate, BRT concluded on the record that only a 10-year tax abatement applied to the Property. (*Id.* at 793a.) Thereafter, on October 27, 2015, BRT issued a written decision/order, wherein BRT reiterated its conclusion that "ONLY A [10-]YEAR TAX ABATEMENT APPLIES TO THIS BUILDING." (*Id.* at 803a.) Appellants appealed BRT's decision/order to Common Pleas. By opinion dated June 2, 2017, Common Pleas determined that the record was insufficient to address Appellants' argument that BRT had granted 2, separate 10-year tax abatements for the Property—the first under Philadelphia Ordinance 1130, Philadelphia Code § 19-1303.3, and the second under Philadelphia Ordinance 961, Philadelphia Code § 19-1303.2—and, therefore, Common Pleas vacated BRT's decision and remanded the matter to BRT for a new hearing. (*Id.* at 890a-92a.)

BRT held a second hearing on December 4, 2017. At that time, Appellants offered the testimony of Attorney Koory, who testified that he sent the

---

[2] At the time of the September 21, 2015 hearing before BRT, Attorney Einhorn withdrew the appeals of those individual condominium unit owners who had not provided him with a completed representation form. (R.R. at 751a-56a.) Attorney Einhorn also noted that one of the individual condominium unit owners had previously advised him that he/she did not want to proceed with the appeal. (*Id.* at 752a.) Appellants in this matter are, therefore, only those 138 individual condominium unit owners—some of which own more than one condominium unit—who made the decision to proceed with the appeal before BRT and who provided Attorney Einhorn with a completed representation form.

6

December 23, 2005 letters to BRT to satisfy the requirements necessary to begin the 10-year term of the tax abatement on the individual condominium units as of January 1, 2006. (*Id.* at 923a-24a.) He indicated that he did not, however, receive any communication from BRT in response to his December 23, 2005 letters—*i.e.*, BRT never confirmed or denied that the tax abatements on the individual condominium units began on January 1, 2006. (*Id.* at 913a-14a, 924a-25a.) Attorney Koory further indicated that, at each of the closings for the sale of the individual condominium units, he provided the purchaser with a copy of the applicable December 23, 2005 letter. (*Id.* at 915a.) He also testified that he informed each purchaser that he/she would receive a 10-year tax abatement on his/her condominium unit that began on January 1, 2006. (*Id.* at 924a-25a.)

Appellants also offered the testimony of Justin Mathews, Jeff Lazinger, Scott Rosenberg, and Ryan Zeichner, 4 of the condominium unit owners. Mr. Mathews, Mr. Lazinger, and Mr. Zeichner testified that Attorney Koory and/or Developer advised them that with their purchase of a condominium unit they would receive a 10-year tax abatement for a portion of their real estate taxes. (*Id.* at 932a, 936a, 942a-43a, 946a-47a, 962a-63a.) They also testified that they relied upon that statement, as well as Developer's marketing materials/sales pitch, when they made their decisions to purchase their condominium units. (*Id.* at 932a-33a, 936a, 943a-45a, 948a-49a, 963a-66a.) In fact, Mr. Mathews and Mr. Lazinger indicated that, without the 10-year tax abatement, they would not have purchased a condominium unit. (*Id.* at 933a-34a, 943a-44a, 947a.) Mr. Mathews, Mr. Lazinger, and Mr. Zeichner admitted, however, that they did not contact any City agency to confirm that they would receive a 10-year tax abatement for their condominium units that began on January 1, 2006. (*Id.* at 937a, 946a-47a,

7

968a-69a.) Similarly, Mr. Rosenberg, a subsequent purchaser, testified that the listing for his condominium unit included a statement that there was a 6-to-7-year tax abatement that would be transferred to him at the time of sale and that he relied upon that statement when he made his decision to purchase his condominium unit. (*Id.* at 952a-56a, 958a-59a.) Mr. Rosenberg also admitted, however, that he did not contact any City agency to confirm that he would receive a 6-to-7-year tax abatement on his condominium unit. (*Id.* at 958a.) In addition to the testimony of Mr. Mathews, Mr. Lazinger, Mr. Rosenberg, and Mr. Zeichner, Appellants also offered affidavits from a substantial number of the other condominium unit owners. (*Id.* at 834a-83a.) In those affidavits, the condominium unit owners indicated that, at the time they purchased their units, they relied upon the tax abatement to provide them with additional funds to pay their expenses, such as mortgage payments. (*Id.*)

Appellants also offered the testimony of Mr. Grasso, who testified that he believed that BRT had granted a new 10-year tax abatement on each of the individual condominium units. (*Id.* at 978a.) Mr. Grasso explained that, based upon that belief, Developer advertised that the sale of the individual condominium units would include a 10-year tax abatement. (*Id.* at 978a, 981a.) With respect to the 2 years of tax abatement that Developer had already received, Mr. Grasso indicated: "I didn't know whether they were going to bill me back for the previous [2] years or not that we had gotten, but I knew we were given 10 years to these buyers. I didn't know what was happening to the previous [2] years." (*Id.* at 982a.)

On December 15, 2017, BRT issued a written decision/order, wherein BRT concluded that "ONLY A [10-]YEAR TAX ABATEMENT APPLIES TO THIS BUILDING BEGINNING IN 2004." (*Id.* at 1018a.) Appellants appealed BRT's decision/order to Common Pleas. By order dated October 28, 2019, Common Pleas

denied Appellants' appeal, concluding that OPA properly terminated the 10-year tax abatement for the Property, effective December 31, 2013. Appellants appealed Common Pleas' order to this Court, and Common Pleas directed Appellants to file a statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure (Rule) 1925(b). In its Rule 1925(a) opinion, Common Pleas reasoned:

> In 2001, Developer purchased the [Property]. The [Property consists of] a [25-]story structure,[3] first built in 1900, that up to that point had been used as an office building. . . . Developer rehabbed the [Property] and converted floors [13] through [25] into [153] residential rental units.
>
> On September 3, 2002, [Mr.] Grasso, acting as the [g]eneral [p]artner of . . . Developer, applied for a [10-]year tax abatement for the "[c]onversion of floors 13[ through ]25 into 153 residential rental units and floor 26 into [a] [h]ealth [s]pa for residents['] use." At the time of the application, full rehabilitation and conversion had only been completed on floors [24] and [25]. On March 20, 2003, . . . BRT issued a letter granting the abatement application for a [10-]year term. On January 9, 2004, . . . BRT issued a letter confirming the abatement period from January 2004 to December 2013. In 2003[,] the conversion of the [Property] to residential apartment use was completed.
>
> At the time of its purchase, the [Property] was a "deteriorated property," as defined by [the Local Economic Revitalization Tax Assistance Act (LERTA)].[4] As stated above, when . . . Developer purchased the [Property] it was zoned and used as an office building. As such, . . . Developer's construction and rehabilitation of the [Property] constituted a conversion from commercial to residential use. The conversion [sic] "construction, improvement, or conversion of deteriorated commercial properties" implicates LERTA and Philadelphia Code . . . § 19-1303[.3]. Therefore, the 2004 [a]batement: (1) was properly applied for and granted under LERTA and Philadelphia Code . . . § 19-1303[.3]; (2) began on January 1, 2004; and[] (3) terminated on December 31, 2013.

---

[3] It is our understanding that the Property contains a 26-story structure, not a 25-story structure.

[4] Act of December 1, 1977, P.L. 237, *as amended*, 72 P.S. §§ 4722-4727.

On June 10, 2005, [Mr.] Grasso informed . . . BRT that floors [13] through [25] of the [Property] had been converted from apartment units to luxury condominium units and subsequently sold. In his letter, [Mr.] Grasso requested that the existing 2004 [a]batement be provided to the new owner-occupants of the condominium units. On December 8, 2005, after the new owner-occupants had filed separate applications with . . . BRT, the 2004 [a]batement was transferred.

Appellants aver that the language of [BRT's December 8, 2005 approval letter] had the effect of starting a new abatement that would run from 2006 through 2015. Such a "re-set" of an abatement is not provided for by the General Assembly in either LERTA or [the Improvement of Deteriorating Real Property or Areas Tax Exemption Act (IDRPA)],[5] nor in the relevant portions of [T]he Philadelphia Code. In fact, [Section 5(c) of] LERTA[, 72 P.S. § 4726(c),] . . . [provides] that, "[t]he exemption from taxes authorized by this act shall be upon the property exempted and shall not terminate upon the sale or exchange of the property." Therefore, it is well established that [BRT's] December 8, 2005[ approval letter] merely conveyed the balance of the 2004 [a]batement to the owner-occupants of the condo[minium] units.

On December 8, 2005, the new owner-occupants received . . . [approval l]etter[s] from . . . BRT. [Those l]etter[s] provide[,] in pertinent part, "[t]he [10]-year abatement term will begin on January 1, in the tax year immediately following the year in which the improvements are completed." Appellants aver that this generic, boilerplate, language had the effect of the [sic] inducing the by [sic] the owner-occupant's [sic] reliance on a new abatement that would run from 2006 through 2015.

It is clear from the record that [Mr.] Grasso knew and understood that the abatement would end in 2013. [Mr.] Grasso's [June 10,] 2005 [l]etter referenced the transfer of "the current abatement" to the new occupant owners, and [Mr.] Grasso stated that the [Property] was "[s]ubject to a ten [(10)-]year tax abatement that began on January 1, 2004[,] and ends on December 31, 2013." Finally, even if the boilerplate language in [BRT's December 8, 2005 approval] letter could be interpreted to create a new abatement, . . . BRT lacked the legal authority, granted by LERTA and the General Assembly, to award another abatement beginning in January of 2006.

---

[5] Act of July 9, 1971, P.L. 206, *as amended*, 72 P.S. §§ 4711-101 to -305.

10

Appellants aver that the improvements completed in 2005, which converted the recently completed apartments to luxury condominium units, equate to the rehabilitating improvements conducted upon deteriorated properties as defined under LERTA, IDRPA, and the corresponding sections of [T]he Philadelphia Code. Therefore, Appellants aver that a new [10-]year abatement term began to run [in] 2006. First, after the completion of the conversion from office building to apartments, the [Property] no longer qualified as "deteriorated" under Philadelphia Code § 19-1303[.2] and LERTA. Second, the optional conversion of apartment units to condominium units, for . . . Developer's financial gain, does not rise to the level of rehabilitation for the purpose of habitability, safety, health, amenity, or compliance, as required under Philadelphia Code § 19-1303[.2] and LERTA.

Finally, for the sake of argument, Appellants' position that [the Property's] 2005 conversion to condominiums created a new abatement, would create a loophole that would allow taxpayers to stack successive [10-]year abatements with every new remodeling project. Such a loophole would fly in the face of Article [VIII], Section 2 of the Pennsylvania . . . Constitution[,] which empowers local taxing authorities to "make uniform special tax provisions applicable to a taxpayer for a *limited period of time* to encourage improvement of *deteriorating property* . . . [.]"

It is clear that the 2004 [a]batement was proper and naturally terminated in 2013 under Article [VIII], Section 2 of the Pennsylvania . . . Constitution, LERTA, and Philadelphia Code § 19-1303[.3]. Furthermore, Appellants have failed to meet their heavy burden of showing an exemption is warranted. Therefore, both this court's decision that the 2004 abatement properly terminated at the end of 2013, and this court's denial of . . . Appellants' appeal from [BRT's decision] were proper.

(Trial Ct. Op. at 7-10 (emphasis in original) (citations omitted) (headings omitted).)

## II. ARGUMENTS ON APPEAL

On appeal,[6] Appellants essentially argue that BRT committed an error of law by concluding that the 10-year tax abatement applicable to the individual

_____

[6] Where, as here, the court of common pleas does not take any additional evidence but decides the matter solely on the record created before the local agency, this Court's scope of review

11

condominium units terminated/expired as of December 31, 2013; and (2) even if BRT properly concluded that the 10-year tax abatement on the individual condominium units terminated/expired as of December 31, 2013, principles of equity require that Appellants receive a full 10-year tax abatement on their condominium units beginning on January 1, 2006, and ending on December 31, 2015.[7]

## III. DISCUSSION

### A. Real Property Tax Abatements Generally

Article VIII, Section 2(b)(iii) of the Pennsylvania Constitution permits the General Assembly to enact laws that, *inter alia*, "[e]stablish standards and qualifications by which local taxing authorities may make uniform special tax provisions applicable to a taxpayer for a limited period of time to encourage improvement of deteriorating property or areas by an individual, association or corporation, or to encourage industrial development by a non-profit corporation." Pursuant to this constitutional authority, the General Assembly enacted IDRPA and LERTA, both of which authorize local taxing authorities to provide real property tax abatements for improvements made to certain deteriorated properties. *See* Section 102 of IDRPA, 72 P.S. § 4711-102; Section 2 of LERTA, 72 P.S. § 4723. More specifically, IDRPA authorizes local taxing authorities to provide tax abatements for "improvements to certain deteriorated residential property and areas," whereas LERTA authorizes local taxing authorities to provide tax

---

is limited to determining whether the local agency violated any constitutional rights, whether the local agency committed an error of law, or whether the local agency's factual findings are supported by substantial evidence. *Kuziak v. Borough of Danville*, 125 A.3d 470, 474 n.2 (Pa. Cmwlth. 2015) (citing *Spencer v. City of Reading Charter Bd.*, 97 A.3d 834, 839 (Pa. Cmwlth. 2014); 2 Pa. C.S. § 754(b)).

[7] We have condensed Appellants' arguments for purposes of discussion.

12

abatements for "new construction in deteriorated areas of economically depressed communities and improvements to certain deteriorated industrial, commercial or other business property." 72 P.S. § 4711-102(a); 72 P.S. § 4723.

Pursuant to the authority granted to it under IDRPA and LERTA, the City's Council adopted 2 ordinances that are relevant to this appeal: Philadelphia Ordinance 1130, which is codified at Philadelphia Code § 19-1303.3, and Philadelphia Ordinance 961, which is codified at Philadelphia Code § 19-1303.2. Under Philadelphia Code § 19-1303.3, which was adopted under LERTA, an applicant is entitled to receive a tax abatement for improvements made to deteriorated industrial, commercial, or other business property. Under Philadelphia Code § 19-1303.2, which was adopted under IDRPA, an applicant is entitled to receive a tax abatement for improvements made to eligible residential property. IDRPA, LERTA, Philadelphia Code § 19-1303.2, and Philadelphia Code § 19-1303.3 limit the maximum tax abatement for improvements made to deteriorated property to 10 years. *See* Section 203(a)(5) of IDRPA, 72 P.S. § 4711-203(a)(5); 72 P.S. § 4726(b)(1); Philadelphia Code § 19-1303.3(4)(b)(.1); Philadelphia Code § 19-1303.2(5)(a). Stated another way, a property owner/taxpayer is entitled to receive a single 10-year tax abatement for improvements made to a deteriorated property. In addition, a tax abatement granted under IDRPA, LERTA, Philadelphia Code § 19-1303.2, and Philadelphia Code § 19-1303.3 is on the property and does not terminate upon the sale or exchange of the property. *See* 72 P.S. § 4711-203(c); 72 P.S. § 4726(c); Philadelphia Code § 19-1303.3(4)(b)(.2); Philadelphia Code § 19-1303.2(5)(b).

13

## B. Termination/Expiration of 10-Year Tax Abatement

Appellants argue that BRT committed an error of law by concluding that the 10-year tax abatement applicable to the individual condominium units terminated/expired as of December 31, 2013. More specifically, Appellants contend that BRT's December 8, 2005 letters plainly and unambiguously establish that BRT granted a 10-year tax abatement on the individual condominium units, not an 8-year tax abatement. Appellants further contend that, because the final certificates of occupancy for the Property were not issued until May 10, 2005, the 10-year tax abatement on the individual condominium units would have started on January 1, 2006, and ended on December 31, 2015. Appellants, therefore, suggest that by terminating the 10-year tax abatement for the individual condominium units effective December 31, 2013, the City, namely OPA, improperly implemented the tax abatement based upon the temporary certificates of occupancy that L&I issued in 2003, rather than the final certificates of occupancy that L&I issued in 2005.[8]

---

[8] Appellants further argue that the central dispute in this case is not whether the Property—or individual condominium units—is tax exempt or should be entitled to receive a tax abatement, but rather, whether the previously granted tax abatement should have been terminated effective December 31, 2013. As a result, Appellants suggest that Common Pleas applied an incorrect standard—*i.e.*, that "statutory provisions exempting property from taxation should be strictly construed"—and burden of proof—*i.e.*, "a heightened burden" or "heavy burden." (Appellants' Br. at 21-22.) Appellants do not, however, suggest what standard or burden of proof Common Pleas should have applied under the circumstances. In any event, as explained more fully below, Appellants' arguments relative to the ultimate issues presented in this case fail regardless of whether the relevant provisions of LERTA, IDRPA, and The Philadelphia Code are strictly construed or whether Appellants are held to a heightened burden of proof.

In response, the City argues that BRT properly concluded that the 10-year tax abatement applicable to the individual condominium units expired on December 31, 2013, because, pursuant to IDRPA, LERTA, Philadelphia Code § 19-1303.2, and Philadelphia Code § 19-1303.3, BRT could not grant any more than a 10-year tax abatement for the improvements made to the Property. More specifically, the City contends that, because Developer enjoyed the first 2 years of the 10-year tax abatement that BRT granted for the improvements that Developer made to the Property and that tax abatement continued on the Property upon Developer's sale of the individual condominium units, Appellants were only entitled to have the remainder of that 10-year tax abatement transferred to them. In other words, Appellants were not entitled to a brand new 10-year tax abatement simply because Developer converted Unit 2 of the Property from 153 residential rental units to 153 individual condominium units. The City further argues that, contrary to Appellants' contentions, the plain and unambiguous language of BRT's December 8, 2005 letters did not provide a new 10-year tax abatement for the individual condominium units beginning on January 1, 2006. The City contends, rather, that BRT's December 8, 2005 letters indicated that the 10-year term of the tax abatement for the individual condominium units would begin in the tax year immediately following the year in which the improvements were completed, which would have been January 1, 2004, not January 1, 2006, because Developer had previously informed BRT that the improvements to the Property had been completed in 2003. The City also contends that the evidence presented to BRT establishes both that "the course of dealing between . . . Developer and . . . BRT shows that both parties intended to simply transfer the remainder of the existing abatement" and that "BRT had

15

treated the [existing] abatement as having been transferred, not re-started." (City's Br. at 26, 27.) Lastly, the City contends that Appellants' argument that BRT should not have commenced the 10-year tax abatement based upon the temporary certificates of occupancy but, instead, should have waited until Developer received the final certificates of occupancy is "over a decade too late," and, even if it was timely, Appellants "have not produced any authority that temporary certificates of occupancy are legally insufficient proof of completion to trigger the start of the [tax] abatement term." (City's Br. at 29, 31.)

While we recognize that BRT's December 8, 2005 letters may "plainly and unambiguously" indicate that the individual condominium units would receive a 10-year tax abatement, the key consideration is when that 10-year tax abatement began. Appellants would like this Court to ignore both the law and the facts and circumstances surrounding this case and conclude that the 10-year tax abatement applicable to the individual condominium units began on January 1, 2006. This we cannot do. BRT's December 8, 2005 letters do not indicate the exact date on which the term of the 10-year tax abatement for the individual condominium units would commence. Rather, BRT's December 8, 2005 letters provide, in relevant part, that "[t]he [10]-year abatement term will begin on January 1, in the tax year immediately following the year in which the improvements are completed." (R.R. at 61a-175a.) The tax year in which the improvements are completed is critical because it is the improvements made to deteriorated property that qualify the Property for a tax abatement. *See* 72 P.S. § 4711-102; 72 P.S. § 4723; Philadelphia Code § 19-1303.3; Philadelphia Code § 19-1303.2. Here, by the time that BRT issued the December 8, 2005 letters, Developer had already informed BRT that the improvements to the Property had been completed—*i.e.*, Developer provided BRT

16

with copies of the temporary certificates of occupancy that L&I had issued for the Property. Thus, based upon the "plain and unambiguous" language of BRT's December 8, 2005 letters and the date on which Developer informed BRT that the improvements to the Property had been completed, the 10-year term of the tax abatement granted on the individual condominium units commenced on January 1, 2004, and ended on December 31, 2013.

That conclusion is further bolstered by the statutory provisions set forth in IDRPA, LERTA, Philadelphia Code § 19-1303.2, and Philadelphia Code § 19-1303.3, all of which limit the maximum tax abatement for improvements made to deteriorated property to 10 years. *See* 72 P.S. § 4711-203(a)(5); 72 P.S. § 4726(b)(1); Philadelphia Code § 19-1303.2(5)(a); Philadelphia Code § 19-1303.3(4)(b)(.1). BRT granted Developer, upon its application, a 10-year tax abatement for Unit 2 of the Property by letter dated March 20, 2003, which Developer subsequently acknowledged began on January 1, 2004, and ended on December 31, 2013. (*See* R.R. at 51a-56a, 60a; Suppl. R.R. at 2b.) Developer was not entitled to a brand new 10-year tax abatement simply because Developer thereafter converted the 153 residential rental units into 153 individual condominium units. By that time, Developer not only had applied for and had been granted a 10-year tax abatement for Unit 2 of the Property, but Developer had also enjoyed the first 2 years of that 10-year tax abatement and did not object to BRT starting the period of that 10-year tax abatement based upon the temporary certificates of occupancy for the Property. In addition, when Developer converted Unit 2 of the Property—*i.e.*, the 153 residential rental units—into 153 individual condominium units and offered them for sale, most, if not all, of the improvements had already been made to the Property and the Property no longer qualified as deteriorated.

17

Thus, Developer would not have qualified for a tax abatement under Philadelphia Code § 19-1303.2. BRT's guidance/instructions to file new applications for each of the individual condominium units under Philadelphia Code § 19-1303.2, therefore, appears to have been a mechanism by which BRT could include the existing tax abatement on 153 separate real estate tax bills for each of the individual condominium units. Moreover, when Developer contacted BRT regarding the conversion of the 153 residential rental units into 153 individual condominium units, Developer acknowledged that BRT had already granted a 10-year tax abatement on the Property and requested assistance in providing the "current abatement" to the purchasers of the individual condominium units. (*See* R.R. at 60a.) For all these reasons, Developer could only pass along to Appellants the 8 years that remained on the 10-year term of the existing/original tax abatement. As a result, we cannot conclude that BRT committed an error of law by determining that the 10-year tax abatement applicable to the individual condominium units terminated/expired as of December 31, 2013.

## C. Equity

Appellants argue, for the first time in this appeal, that, even if BRT properly concluded that the 10-year tax abatement applicable to the individual condominium units terminated/expired as of December 31, 2013, principles of equity require that Appellants receive a full 10-year tax abatement on their condominium units beginning on January 1, 2006, and ending on December 31, 2015. In that regard, Appellants contend that, because BRT informed Appellants in writing that they would receive a 10-year tax abatement on their individual condominium units, this Court should apply the doctrine of equitable estoppel and preclude the City from "depriving [Appellants] of the preconceived benefits of a [10]-year real estate tax

18

reduction." (Appellants' Br. at 25.) Relying upon a statement made by Common Pleas in its June 2, 2017 opinion vacating BRT's initial order/decision and remanding the matter to BRT for a new hearing, Appellants suggest that BRT's December 8, 2005 letters were not "boilerplate" and did not serve merely to transfer the existing 10-year tax abatement to the individual condominium unit owners, because, standing alone, those letters would lead the individual condominium unit owners to believe that the 10-year tax abatement would commence on January 1, 2006. Appellants further suggest that the evidence of record—namely, that BRT instructed Developer to file new applications for the individual condominium units under Philadelphia Code § 19-1303.2, that no BRT employee ever indicated to Developer that the existing abatement would be transferred, and that nowhere in BRT's December 8, 2005 letters did BRT indicate that the term of the abatement would be 8 years rather than 10 years—clearly establishes that Appellants justifiably relied upon BRT's December 8, 2005 letters to mean that Appellants had been granted a 10-year tax abatement. Appellants further contend that "[t]his Court should be especially willing to exercise its equitable powers" and rule in favor of Appellants because their position is consistent with what they have characterized as "[m]odern [e]nabling [l]egislation,"[9] entitling a property

---

[9] The "modern enabling legislation" cited and relied upon by Appellants is Section 205 of The General County Assessment Law, Act of May 22, 1933, P.L. 853, *as amended*, added by the Act of July 29, 1970, P.L. 642, 72 P.S. § 5020-205, which is entitled "Temporary tax exemption for residential construction," and provides, in relevant part:

> (b) New single and multiple dwellings constructed for residential purposes and improvements to existing unoccupied dwellings or improvements to existing structures for purposes of conversion to dwellings, shall not be valued or assessed for purposes of real property taxes until (1) occupied, (2) conveyed to a bona fide purchaser or, (3) [30] months from the first day of the month after which the building permit was issued or, if no building permit or other notification of improvement was required, then from the date construction commenced.

19

owner/developer to receive a "construction abatement." (Appellants' Br. at 32.) In support thereof, Appellants suggest that, "[h]ad the [c]onstruction [a]batement been in effect when the Property was first renovated, [Developer] would have applied for the [c]onstruction [a]batement and would have enjoyed a [2]-year period of abatement prior to converting the [rental] units into condominium[ units, and, u]pon the sale of each [condominium ]unit, the abatement would have converted, as it did, into an . . . abatement [under Philadelphia Code § 19-1303.2,] granting each condominium unit owner a separate [10]-year abatement term." (*Id.* at 33.)

In response, the City argues that Appellants' equitable estoppel argument lacks merit because, even if BRT actively misrepresented that Appellants would receive a brand new 10-year tax abatement on their individual condominium units, BRT cannot be estopped from collecting taxes, an essential government function, or compelled to award a tax benefit that exceeds its authority under IDRPA, LERTA, Philadelphia Code § 19-1303.2, and Philadelphia Code § 19-1303.3. The City further argues that, even if the doctrine of equitable estoppel could be applied to BRT under these circumstances, Appellants have not established the required elements for equitable estoppel—*i.e.*, a misrepresentation made by BRT directly to Appellants, rather than to Developer and subsequently "passed-through" to Appellants, that Developer's reliance on BRT's December 8, 2005 letters as establishing a brand new 10-year tax abatement on the individual condominium units beginning on January 1, 2006, was reasonable, or that BRT made a misrepresentation of material fact, as opposed to a misrepresentation of law. The City also contends that the "construction abatement" cannot form the basis for equitable relief because Appellants have not advanced any viable claim that would justify extending their tax abatement for an additional 2 years.

20

Even if we were to put aside the fact that Appellants may have waived their equitable arguments by failing to raise them before BRT and/or Common Pleas,[10] we cannot conclude that Appellants would be entitled to equitable relief. "[T]he Commonwealth [of Pennsylvania] or its subdivisions or instrumentalities[, in this case the City,] cannot be estopped 'by the acts of its agents and employees if those acts are outside the agent's powers, in violation of positive law, or acts which require legislative or executive action.'" *Cent. Storage & Transfer Co. v. Kaplan*, 410 A.2d 292, 294 (Pa. 1979) (quoting *Kellams v. Pub. Sch. Emps.' Ret. Bd.*, 403 A.2d 1315, 1318 (Pa. 1979) (Larsen, J., Opinion in Support of Reversal)). Thus, even if Appellants could establish all of the elements necessary to assert a claim under the theory of equitable estoppel[11]—including that BRT somehow misrepresented to Appellants, who were not the direct recipients of BRT's December 8, 2005 letters and who did not even own the individual condominium units at the time that BRT issued its December 8, 2005 letters, that the 10-year tax abatement applicable to the individual condominium units commenced on January 1, 2006, and ended on December 31, 2015—Appellants cannot prevail because BRT could only grant a maximum of 10 years of tax abatement for the improvements that Developer made to the Property. *See* 72 P.S. § 4711-203(a)(5);

---

[10] Although the City noted, but did not definitively raise, the waiver issue, "an appellate court may *sua sponte* refuse to address an issue raised on appeal that was not raised and preserved below." *Lynch v. Dep't of Transp., Bureau of Driver Licensing*, 710 A.2d 126, 128 n.6 (Pa. Cmwlth. 1998).

[11] "The doctrine of equitable estoppel may be applied to a Commonwealth agency when the party asserting estoppel establishes that: (1) the agency negligently misrepresented a material fact; (2) the agency knew or had reason to know that the party would justifiably rely on the misrepresentation; and (3) the party acted to his or her detriment by justifiably relying on the misrepresentation." *Forbes v. Pa. Dep't of Corr.*, 931 A.2d 88, 94 n.6 (Pa. Cmwlth. 2007), *aff'd*, 946 A.2d 103 (Pa. 2008), *cert. denied*, 555 U.S. 1192 (2009).

21

72 P.S. § 4726(b)(1); Philadelphia Code § 19-1303.3(4)(b)(.1); Philadelphia Code § 19-1303.2(5)(a). As explained more fully above, Developer used and enjoyed the first 2 years of that 10-year tax abatement and, therefore, could only pass along to Appellants the remainder of that 10-year term, which ended on December 31, 2013. As a result, we cannot conclude that Appellants are entitled to equitable relief in the form of a 10-year tax abatement on their condominium units beginning on January 1, 2006, and ending on December 31, 2015.

## IV. CONCLUSION

Accordingly, we affirm Common Pleas' order.

_____
P. KEVIN BROBSON, President Judge

22

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Charlie Choe, Michael Baio, Junda Zhu,   :
Edward Rumell, Shanlin Shah, Jared       :
Levin, Daniel Tokich, David Vansciver,   :
Rebeccah Lavitan, Namita Kalyan,         :
Moataz Elrafie, Adam Murray,             :
Christopher Kui, Monica Burton,          :
Patrick Lyman, Stephen Ficchi, Joan      :
Schwartz, Meredith Armstrong,            :
Brandon Karpo, Gennady Spector,          :
Daniel Bigler, Dan Dubiner, Paul Kim,    :
Pamela Beatrice, Bidlur Shivaprakash,    :
Elisa Keppler, John Didomenicis,         :
Alaina Gregorio, Marilyn Myers,          :
Daniel Friel, Jan Topczewski, Gary       :
Staegemann, Ronald Banner, Shira         :
Cohen, Luigi Adamo, Lauren Dolaway,      :
Sylvester Mendoza, Christopher Clay,     :
Kristen Kammerer, Irving Scolnick,       :
Caroline Lederman, Michael Hertz,        :
Mary Ellen Byrne, Christopher Meffe,     :
Jerry DeSiderato, Felix Korostin, John   :
Hyson, Thomas Modafferi, Eugenio         :
Boldrini, Sean Logue, Rina Kaplan,       :
David Blumenfeld, Tapas Tejura,          :
Thomas Murry, Lauren Aquino, Justin      :
Mathews, Andry Oei, Ariel Jaduszuwer,    :
Neelam Bhalakia, Stratton Lee, Zachary   :
Berman, Lei Ju, Mian Jan, Daniel         :
Levine, Adam Solow, Enrico Pagnanelli,   :
Tuu Thampy, Marie Carroll, Jeffrey       :
Rubin, Bin Meng, David Esola, Elena      :
Bernardis, David Ackers, Lynn            :
Rothman, Alan Herbert, David Waxman,     :
Carolyn Gregory, Scott Rosenberg,        :
Ajit Singh, Patricia Wong, Jeff Lazinger,:
Bartholomew Omalley, 111 S 15th St       :
Associates, William Hammill, Daniel      :
Spitzen, Costandi Awadalla, Michael      :
Canino, Arthur Bachman, George Audi,     :
Meredith Shapiro, Valsa Jacob, Farrah    :

Awadalla, Jeremiah Eagan, Constantinos : 
Ketonis, Michael Field, Peter Shulman, : 
Gilberto Pereira, Garrett Miller, Carolyn : 
Prager, Pushkar Murthy, Melissa : 
Sigmond, Victoria Chen, Steven Appel, : 
Siham Abarkan, Lance Moore, Georges : 
Bandlec, Hsu-Nan Huang, Mitchell : 
Kent, Rainer Westphal Trust, Caitlin : 
Cantor, David Kwasny, Jacob Lazinger, : 
John Wynn, R N Jwalamalini : 
Kumaraiah, Laura Levenberg, Keerthi : 
Gogineni, Anne Connelly, Arthur : 
Armstrong, Edward English, Luv Ram : 
Javia, Richard Gorniak, Stephanie : 
Spaeder, Gary Grunder, Andrzei : 
Cetnarski, Chaim Ouziel, Julie Terrana, : 
Nevena Simidjiysha, Adam Telem, : 
Stephen Lowe, Andrew Rosen and : 
Mahbod Mohazzebi, : 
                 Appellants : 
                 : 
           v. :     No. 1824 C.D. 2019
                 : 
From the Decision of the Philadelphia : 
Board of Revision of Taxes : 

# **O R D E R**

AND NOW, this 19th day of April, 2021, the order of the Court of Common Pleas of Philadelphia County, dated October 28, 2019, is hereby AFFIRMED.

_____
P. KEVIN BROBSON, President Judge
